**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: THE HONORABLE TIMOTHY M. REIF, JUDGE**

| | |
|---|---|
| COMMERCIAL STEEL PRODUCTS LLC, <br><br> *Plaintiff,* <br><br> v. <br><br> UNITED STATES, <br><br> *Defendant,* <br><br> and <br><br> AXIS PIPE AND TUBE, BORUSAN MANNESMANN PIPE U.S.A., INC., PTC LIBERTY TUBULARS LLC, VALLOUREC STAR, L.P.,  AND WELDED TUBE USA, INC., <br><br> *Proposed Defendant-Intervenors.* | **Court No. 26-03016** |

## <u>COMMENTS ON MOTION FOR STATUTORY INJUNCTION</u>

On behalf of proposed defendant-intervenors Axis Pipe and Tube, Borusan Mannesmann Pipe U.S.A., Inc., PTC Liberty Tubulars LLC, Vallourec Star, L.P., and Welded Tube USA, Inc. (the "Domestic Producers" or the "Proposed Defendant-Intervenors"), we hereby submit comments on Plaintiff's motion for a statutory injunction of July 21, 2026. *See* ECF No. 15.

Proposed Defendant-Intervenors submitted their unopposed motion to intervene in this action on July 20, 2026 (*see* ECF No. 11) but have not yet been granted intervenor status by the Court. As Proposed Defendant-Intervenors have not yet been made party to this proceeding, Plaintiff did not seek Proposed Defendant-Intervenors' consent to its

motion for a statutory injunction. *See* ECF No. 15. Accordingly, Proposed Defendant-Intervenors have not yet had an opportunity to comment on the proposed statutory injunction and wish to bring several issues concerning that request to the Court's attention.

Plaintiff asks the Court to enjoin all agencies of the United States, including both the Department of Commerce ("Commerce") and U.S. Customs and Border Protection ("CBP") from liquidating entries made by Plaintiff between January 14, 2024 through December 18, 2024. *See* ECF No. 15 at 2. However, in the action before the Court here, Plaintiff is expressly challenging only Commerce's actions in a covered merchandise inquiry ("CMI"). *See, e.g.*, ECF No. 1 (Summons) and ECF No. 7 (Complaint). The suspension of liquidation for entries prior to December 18, 2024 was imposed solely under the authority of CBP, not the authority of Commerce that Plaintiff is challenging here.

Commerce's CMI that Plaintiff challenges arose from a referral on certain scope issues made by CBP in its Enforce and Protect Act ("EAPA") investigation into imports of oil country tubular goods ("OCTG") that CBP ultimately found to be transshipped Chinese merchandise. As CBP's EAPA determination is not part of the record in Commerce's action being challenged here, we provide CBP's EAPA determination memorandum for the Court in **Attachment 1** to this submission.

In its final EAPA determination, CBP was emphatic—as it was responding to arguments by Plaintiff and other parties that CBP lacked any independent authority to suspend the imports under the investigation than authority granted to it by Commerce under the CMI—that it was *not* suspending liquidation under any direction from, nor

authority delegated by, Commerce. Instead, CBP explained that its actions were taken under its own independent authority granted under the EAPA statute, which CBP explained has been recognized by this Court as independent of Commerce's suspension authority. *See* **Attachment 1**, EAPA Cons. Case 8143, *Notice of Determination as to Evasion* (CBP June 29, 2026) at 8-12. Indeed, CBP did not rely on Commerce's CMI determination on OCTG produced from solid billet to find evasion in the EAPA investigation. CBP instead held that substantial evidence showed—contrary to the claims of the alleged Thai producer of the OCTG that it had made all the merchandise from solid billets in Thailand—that the Thai company had instead worked with a professional transshipment company to bring Chinese pipe and hollow tube into Thailand. *See id.* at 14-15. CBP applied adverse inferences in making its determination that all the entries under investigation, including Plaintiff's, were subject merchandise due to that attempt by the Thai company to mislead CBP and due to other direct attempts by those parties to further defraud CBP. *See id.* at 15-18. CBP did not suspend liquidation to entries prior to December 18, 2024 based on any authority from Commerce.

Also notably, Commerce itself was clear that in the CMI that its order for the suspension of liquidation for OCTG produced in Thailand from Chinese solid billet was made under Commerce's distinct suspension authority (under 19 C.F.R. § 351.227(l)(3)) and that order applied only to entries made after December 18, 2024. As Commerce's record has not yet been filed in this case, we provide Commerce's CMI decision memorandum in **Attachment 2**. *See* **Attachment 2**, *Oil Country Tubular Goods from the*

*People's Republic of China: Issues and Decision Memorandum for the Final Determination of Covered Merchandise Inquiry – EAPA Inv. 8143* (Dep't Commerce Apr. 21, 2026) at 5-6.

Thus, both agencies made clear that any suspension of pre-December 18, 2024 entries was made solely under CBP's, not Commerce's, authority. However, Plaintiff asks this Court to enjoin CBP's actions on those entries through this action that challenges only Commerce's authority. We ask the Court to consider the propriety of allowing such a collateral attack, seeking to enjoin one agency's authority through a court challenge to a separate agency's action, before granting that injunction. *See, e.g.*, *Rimco Inc. v. United States*, 98 F.4th 1046, 1053 (Fed. Cir. 2024) (holding that a plaintiff could not attack Commerce's AD/CVD decisions by challenging CBP's application of the results of those decisions and holding that the "true nature" of the action must be considered).

Respectfully Submitted,

/s/ Roger Schagrin
Roger B. Schagrin
Luke A. Meisner
Nicholas J. Birch
**SCHAGRIN ASSOCIATES**
900 Seventh Street, N.W., Suite 500
Washington, D.C. 20001
*Counsel for Axis Pipe and Tube,*
*Borusan Mannesmann Pipe U.S.A.,*
*Inc., PTC Liberty Tubulars LLC,*
*Vallourec Star, L.P., and Welded Tube*
*USA, Inc.*

Dated: July 22, 2026

4

# ATTACHMENT 1

EAPA Cons. Case 8143, *Notice of Determination as to Evasion* (CBP June 29, 2026)



1300 Pennsylvania Avenue, NW
Washington, DC 20229

**U.S. Customs and Border Protection**

June 29, 2026

**PUBLIC VERSION**

EAPA Cons. Case 8143

Commercial Steel Products LLC
c/o Matthew L. Kanna
Greenberg Traurig, LLP
2101 L Street NW, Suite 1000
Washington, DC 20037

JOL Tubular, Inc.
c/o Gregory S. Menegaz
The Inter-Global Trade Law Group PLLC
1156 Fifteenth Street NW, Suite 1101
Washington, DC 20005

U.S. OCTG Manufacturers Association
c/o Nicholas J. Birch
Schagrin Associates
900 Seventh Street NW, Suite 500
Washington, DC 20001

**Re:  Notice of Determination as to Evasion**

Pursuant to an examination of the record in Enforce and Protect Act (EAPA) investigation 8143, U.S. Customs and Border Protection (CBP) has determined that there is substantial evidence that Commercial Steel Products LLC (CSP) and JOL Tubular, Inc. (JOL Tubular) (collectively, the Importers) entered merchandise covered by antidumping (AD) and countervailing (CVD) duty orders A-570-943 and C-570-944 (covered merchandise)[1] into the customs territory of the United States through evasion.[2]  Substantial evidence demonstrates that the Importers imported oil country tubular goods (OCTG) from the People's Republic of China (China) into the United States by transshipment through Thailand.  The Importers did not declare that the merchandise

---

[1] *See* 19 C.F.R. § 165.1.

[2] *See Certain Oil Country Tubular Goods from the People's Republic of China: Final Affirmative Countervailing Duty Determination, Final Negative Critical Circumstances Determination*, 74 FR 64045 (December 7, 2009), as amended in *Certain Oil Country Tubular Goods from the People's Republic of China: Amended Final Affirmative Countervailing Duty Determination and Countervailing Duty Order*, 75 FR 3203 (January 20, 2010); *see also Certain Oil Country Tubular Goods from the People's Republic of China: Final Determination of Sales at Less Than Fair Value, Affirmative Final Determination of Critical Circumstances and Final Determination of Targeted Dumping*, 75 FR 20335 (April 19, 2010), as amended in *Certain Oil Country Tubular Goods from the People's Republic of China: Amended Final Determination of Sales at Less Than Fair Value and Antidumping Duty Order*, 75 FR 28551 (May 21, 2010) (*AD/CVD Orders*).

was subject to the *AD/CVD Orders* on entry and, as a result, no cash deposits were collected on the merchandise.

**Background**

On December 17, 2024, the U.S. OCTG Manufacturers Association (the Alleger), a trade association of domestic producers of OCTG, submitted allegations to CBP that the Importers were evading the *AD/CVD Orders* on OCTG from China.[3]  The Allegations asserted that the Importers were importing Chinese-origin OCTG that was transshipped through Thailand.[4]  On January 14, 2025, CBP acknowledged receipt of the Allegations.[5]

CBP found the information in the Allegations reasonably suggested that the Importers entered covered merchandise into the customs territory of the United States through evasion.[6]  Consequently, on February 5, 2025, CBP initiated an EAPA investigation pursuant to Title IV, section 421 of the Trade Facilitation and Trade Enforcement Act of 2015.[7]  After the initiation of this investigation, CBP issued CBP Form 28 (CF-28) questionnaires to each of the Importers concerning certain entries of OCTG from their Thai supplier Boly Pipe Co., Ltd. (Boly Pipe) and requested the corresponding entry and production documentation.[8]  Each Importer submitted a CF-28 response concerning its respective entries.[9]  After receiving these CF-28 responses, CBP added a memorandum to the administrative record containing the determination notice from a previous EAPA investigation (EAPA 7890) pertaining to OCTG, relevant CF-28 responses from EAPA 7890, and information on a freight forwarder that Boly Pipe used, named Yifan Shipping (Thailand) Co., Ltd (Yifan Shipping Thailand).[10]

---

[3] *See* Letter from the Alleger, "Oil Country Tubular Goods from China: Request for an Investigation under the Enforce and Protect Act," dated December 17, 2024 (JOL Tubular Allegation); *see also* Letter from the Alleger, "Oil Country Tubular Goods from China: Request for an Investigation under the Enforce and Protect Act," dated December 17, 2024 (CSP Allegation) (Collectively, the Allegations).  The Alleger, the U.S. OCTG Manufacturers Association, is a trade association entirely composed of domestic producers of OCTG and, thus, meets the definition of an interested party that is permitted to submit an EAPA allegation pursuant to 19 U.S.C. § 1517(a)(6)(A)(iv), 19 C.F.R. § 165.1(5), and 19 C.F.R. § 165.11(a).  *See* Allegations at Exhibit 2.

[4] *Id.*

[5] *See* 19 C.F.R. § 165.12; *see also* Email from CBP, "EAPA 8143 – Official Receipt of Properly Filed Allegation," dated January 14, 2025 (JOL Tubular Official Receipt); *see also* Email from CBP, "EAPA 8160 – Official Receipt of Properly Filed Allegation," dated January 14, 2025 (CSP Official Receipt).

[6] *See* 19 U.S.C. § 1517(b)(1); *see also* 19 C.F.R. § 165.15.

[7] *See* 19 U.S.C. § 1517(b)(5); *see also* 19 C.F.R. § 165.13; *see also* CBP Memorandum, "Initiation of Investigation for EAPA 8143 and 8160 (Consolidated Case 8143)," dated February 5, 2025 (Initiation Memorandum).

[8] On February 18, 2025, CBP issued CF-28s to JOL Tubular on entries [  #  ]5108, [  #  ]8532, and [  #  ]4463 and to CSP on entries [  #  ]7916 and [  #  ]0883.

[9] JOL Tubular submitted a CF-28 response on March 13, 2025 and CSP submitted a CF-28 response on March 18, 2025.  After announcing the EAPA investigation, CBP asked the Importers to bracket their respective CF-28 responses.  As a result, the bracketed versions of the respective CF-28 responses are as follows:  *See* Letter from JOL Tubular, "EAPA Case No. 8143 – Bracketed CF-28," dated July 1, 2025 (JOL Tubular CF-28 Response); *see also* Letter from CSP, "EAPA Investigation #8143; Bracketing of CF-28 Response," dated July 7, 2024 (CSP CF-28 Response);

[10] *See* CBP Memorandum, "Adding Information to the Administrative Record of EAPA 8143," dated May 12, 2025 (May 2025 Memorandum).  None of the importers or suppliers from EAPA 7890 were involved in this investigation.

After evaluating the information on the record, CBP determined that reasonable suspicion existed that the Importers imported Chinese-origin OCTG into the United States that had been transshipped through Thailand.[11]  This information included the fact that CSP's and JOL Tubular's CF-28 responses contained certain discrepancies.  CBP requested the same information from CSP and JOL Tubular, such as complete production records.[12]  JOL Tubular provided production documents for five production steps; however, other record information indicated it was unlikely that these were the complete production documents.[13]  CSP's and JOL Tubular's CF-28 responses provided a list of Boly Pipe's equipment, which briefly explained each piece of equipment's production functions for about [ # ] OCTG production steps.[14]  In comparison, CF-28 responses from EAPA 7890 provided separate OCTG production documents for 16 production steps from TOP and for [ # ] production steps from the other manufacturer, PET.[15]  Because Boly Pipe's list of equipment discusses far more than five production steps, and other Thai OCTG producers provided much more than five production step documents as well in another similar EAPA case, CBP suspected additional Boly Pipe production documents likely existed.  As such, CBP doubted the completeness of Boly Pipe's production documents contained in JOL Tubular's and CSP's CF-28 responses.  Finally, the dates on some of the mill test certificates occurred well after production, which appeared to indicate that Boly Pipe filled out the mill test certificates apart from any tests on the OCTG. [16]  The CF-28 responses did contain any explanation for the apparent discrepancy.[17]

Additionally, a [                                        description of employee and an event that transpired ] Thai companies transship Chinese product to the United States as a product of Thailand, [ description] TOP {Thai Oil Pipe Co., Ltd.} follows the same practice."[18]  In EAPA 7890's determination, CBP found that TOP facilitated the transshipment of Chinese-origin OCTG through its facility in Thailand.[19]  As such, the veracity of [          description of an event     ] was substantiated.  Because [  description of a conversation  ] TOP and other Thai companies transshipped Chinese OCTG, and [   description of an individual    ], these two facts support the conclusion that Boly Pipe is facilitating the transshipment of Chinese-origin OCTG to JOL Tubular and CSP.

Finally, CSP's and JOL Tubular's CF-28 responses indicated that Boly Pipe used Yifan Shipping Thailand as one of its freight forwarders.[20]  In EAPA 7890, CBP found that Yifan Shipping Thailand and Yifan Shipping (Singapore) Pte. Ltd. may have helped TOP and Petroleum Equipment (Thailand) Co., Ltd. (PET) facilitate the transshipment of Chinese-origin OCTG through Thailand.[21]  In a press release, Yifan Shipping Thailand expressed its willingness to

---

[11] *See* Letter from CBP, "Notice of Initiation of Investigation and Interim Measures - EAPA Cons. Case 8143," dated May 13, 2025 (NOI).

[12] *See* CSP CF-28 Response; *see also* JOL Tubular CF-28 Response.

[13] *See* JOL Tubular CF-28 Response.

[14] *Id.* at Exhibit 4; *see also* NOI at 6.

[15] *See* May 2025 Memorandum at Attachments 5-6.

[16] *See* JOL Tubular CF-28 Response; *see also* NOI at 8.

[17] *Id.*

[18] *See* May 2025 Memorandum at Attachment 3, pages 2-5.  [          description of a conversation     ] in a declaration contained in EAPA 7890's allegations.

[19] *Id.* at Attachment 1.

[20] *See* CSP CF-28 Response; *see also* JOL Tubular CF-28 Response; *see* NOI at 8.

[21] *See* May 2025 Memorandum at Attachment 1, pages 30-32.

3

facilitate transshipment as such: "{c}ustomers looking to ship Chinese products to the US can reroute the cargo to Thailand and depart from here, alleviating the US's trade embargo policy for Chinese products."[22]

Consequently, on May 6, 2025, CBP informed JOL Tubular, CSP, and the Alleger of the initiation of the investigation and of CBP's decision to impose interim measures on their entries based on a reasonable suspicion of evasion.[23]  CBP also issued a notice of initiation of investigation and interim measures (NOI) to the Importers and the Alleger on May 13, 2025.[24] The notice informed them that the entries covered by the investigation are those entered for consumption, or withdrawn from warehouse for consumption, from January 14, 2024, through the pendency of this investigation.[25]  As part of interim measures, CBP suspended the Importers' entries that entered after the initiation of the investigation pursuant to its authority under 19 U.S.C. § 1517(e).

CBP issued requests for information (RFIs) to JOL Tubular, CSP, and Boly Pipe,[26] each of whom subsequently responded to the RFIs.[27]  CBP also added an additional memorandum to the case record composed of additional research results such as website screenshots, emails, and Texas Secretary of State documents considered by CBP during the investigation.[28]  CBP officials conducted a verification in Thailand at Boly Pipe's facility from November 6, 2025, to November 11, 2025.[29]  CBP extended the deadline to make a determination as to evasion for this

---

[22] *Id.* at Attachment 4, page 5.

[23] *See* CBP Email, "CBP EAPA Investigation 8143 - Notice of Initiation of Investigation and Interim Measures," dated May 6, 2025.

[24] *See* NOI; *see also* 19 U.S.C. § 1517(e); *see also* 19 C.F.R. § 165.24.

[25] *See* 19 C.F.R. § 165.2.  Entries covered by the investigation generally include entries up to one year prior to the date CBP officially received the Allegations; this is also known as the period of investigation (POI).

[26] *See* Letter from CBP to CSP, "EAPA 8143 – Request for Information from Commercial Steel Products LLC," dated May 13, 2025; *see also* Letter from CBP to JOL Tubular, "EAPA 8143 – Request for Information from JOL Tubular, Inc.," dated May 13, 2025; *see also* Letter from CBP to Boly Pipe, "EAPA 8143 - Request for Information from Boly Pipe Co., Ltd.," dated May 13, 2025; *see also* Letter from CBP to CSP, "EAPA 8143 – Supplemental Request for Information from Commercial Steel Products, LLC," dated July 31, 2025; *see also* Letter from CBP to JOL Tubular, "EAPA 8143 – Supplemental Request for Information from JOL Tubular, Inc.," dated July 31, 2025; *see also* Letter from CBP to Boly Pipe, "EAPA 8143 – Supplemental Request for Information from Boly Pipe Co., Ltd.," dated July 31, 2025.

[27] *See* Letter from CSP, "EAPA Investigation #8143; Request for Information Response," dated June 20, 2025 (CSP RFI); *see also* Letter from JOL Tubular, "EAPA Case No. 8143 – RFI Questionnaire Response," dated June 17, 2025 (JOL Tubular RFI); *see also* Letter from Boly Pipe, "EAPA Case No. 8143 – RFI Questionnaire Response," dated June 20, 2025 (Boly Pipe RFI); *see also* Letter from CSP, "EAPA Investigation #8143; Supplemental Request for Information Response," dated August 25, 2025 (CSP SRFI); *see also* Letter from JOL Tubular, "EAPA Case No. 8143 – Supplemental Questionnaire Response," dated August 21, 2025 (JOL Tubular SRFI); *see also* Letter from Boly Pipe, "EAPA Case No. 8143 – Supplemental Questionnaire Response," dated August 21, 2025 (Boly Pipe SRFI); *see also* Letter from JOL Tubular, "EAPA Case No. 8143 – Supplemental Questions Response – REVISED," dated November 21, 2025 (JOL Tubular SRFI 2); *see also* Letter from Boly Pipe, "EAPA Case No. 8143 – Supplemental Questions Response – REVISED," dated November 21, 2025 (Boly Pipe SRFI 2).

[28] *See* CBP Memorandum, "Adding Information to the Administrative Record of EAPA 8143," dated May 4, 2026 (May 2026 Memorandum).

[29] *See* CBP Memorandum, "On-Site Verification Report," dated January 1, 2025 (Verification Report); *see also* CBP Letter to Boly Pipe, "Verification Engagement Letter and Agenda (Boly Pipe)," dated October 28, 2025.

case by 60 days.[30]  On December 1, 2025, CBP submitted a covered merchandise referral to the U.S. Department of Commerce (Commerce), which stayed the investigation's remaining deadlines for written arguments and the determination.[31]  On April 22, 2026, Commerce provided CBP with its decision on the covered merchandise referral, which resumed the investigation.[32]  On May 14, 2026, the Alleger, CSP, and JOL Tubular timely submitted written arguments.[33]  The Alleger, CSP, and JOL Tubular also timely submitted responses to written arguments on June 1, 2026.[34]

**Analysis as to Evasion**

Under 19 U.S.C. § 1517(c)(1)(A), to reach a determination as to evasion in this case, CBP must "make a determination, based on substantial evidence, with respect to whether such covered merchandise entered into the customs territory of the United States through evasion."  Evasion is defined as "the entry of covered merchandise into the customs territory of the United States for consumption by means of any document or electronically transmitted data or information, written or oral statement, or act that is material and false, or any omission that is material and that results in any cash deposit or other security of any amount of applicable antidumping or countervailing duties being reduced or not being applied with respect to the covered merchandise."[35]  As discussed below, substantial evidence on the record indicates that JOL Tubular and CSP entered Chinese-origin OCTG through evasion.

---

[30] *See* Letter from CBP, "Notice of Extension of Final Determination," dated July 7, 2025, in accordance with 19 U.S.C. § 1517(c)(1)(B) and 19 C.F.R. § 165.22(c).  CBP issues the determination notice within five business days after the determination decision.  *See* 19 C.F.R. § 165.27(b).

[31] *See* Letter from CBP to Commerce, "Covered Merchandise Referral Request for EAPA Investigation 8143 Involving the Antidumping and Countervailing Duty Orders on Certain Oil Country Tubular Goods from the People's Republic of China," dated December 1, 2025 (Covered Merchandise Referral); *see also* 19 U.S.C. § 1517(b)(4)(A); *see also* 19 C.F.R. § 165.16(d).

[32] *See* Commerce Memorandum, "Oil Country Tubular Goods from the People's Republic of China: Issues and Decision Memorandum for the Final Determination of Covered Merchandise Inquiry – EAPA Inv. 8143," dated April 21, 2026 (Covered Merchandise Decision); *see also* Letter from Commerce to CBP, "Covered Merchandise Referral Regarding EAPA Investigation No. 8143," dated April 22, 2026 (Covered Merchandise Letter); *see also* 19 U.S.C. § 1517(b)(4)(A); *see also* 19 C.F.R. § 165.16(d).

[33] *See* Letter from the Alleger, "EAPA Consl. Case No. 8143, Oil Country Tubular Goods from China: Submission of Written Argument," dated May 14, 2026 (Alleger Written Arguments); *see also* Letter from CSP, "Oil Country Tubular Goods from the People's Republic of China – Written Arguments," dated May 14, 2026 (CSP Written Arguments); *see also* Letter from JOL Tubular, "EAPA Case No. 8143 – Written Argument," dated May 14, 2026 (JOL Tubular Written Arguments).

[34] *See* Letter from the Alleger, "EAPA Consl. Case No. 8143, Oil Country Tubular Goods from China: Submission of Responses to Written Argument," dated June 1, 2026 (Alleger Response to Written Arguments); *see also* Letter from CSP, "Oil Country Tubular Goods from the People's Republic of China – Letter in Lieu of Response to Written Arguments," June 1, 2026; *see also* Letter from JOL Tubular, "EAPA Case No. 8143 – Rebuttal Written Argument," dated June 1, 2025 (JOL Tubular Response to Written Arguments).

[35] *See* 19 C.F.R. § 165.1; *see also* 19 U.S.C. § 1517(a)(5)(A).  According to 19 U.S.C. § 1517(a)(3), "The term 'covered merchandise' means merchandise that is subject to— (A) an antidumping duty order issued under section 1673e of this title; or (B) a countervailing duty order issued under section 1671e of this title."

*Covered Merchandise Referral*

JOL Tubular affirmed it was affiliated with the exporters Nanobest Limited (Nanobest)[36] and Boly Pipe.[37] Boly Pipe's website indicates it was set up in Thailand in 2012.[38] Boly Pipe stated it produced its OCTG during the POI solely out of steel billets from China or [country].[39] Boly Pipe stated that it or Nanobest purchased and imported these steel billets into Thailand.[40] Boly Pipe indicated its production did not begin with any other kind of raw material, and that the steel billets were not hollow until they pierced them.[41]

The physical characteristics of these steel billets conform on several points to the physical characteristics described in the scope of the *AD/CVD Orders*. These *AD/CVD Orders* state that they cover

> … certain oil country tubular goods ("OCTG"), which are hollow steel products of circular cross-section, including oil well casing and tubing, of iron (other than cast iron) or steel (both carbon and alloy), whether seamless or welded, regardless of end finish (e.g., whether or not plain end, threaded, or threaded and coupled) whether or not conforming to American Petroleum Institute ("API") or non-API specifications, whether finished (including limited service OCTG products) or unfinished (including green tubes and limited service OCTG products), whether or not thread protectors are attached. The scope of the order also covers OCTG coupling stock. Excluded from the scope of the order are casing or tubing containing 10.5 percent or more by weight of chromium; drill pipe; unattached couplings; and unattached thread protectors.

> The merchandise covered by the order is currently classified in the Harmonized Tariff Schedule of the United States ("HTSUS") under item numbers: 7304.29.10.10, 7304.29.10.20, 7304.29.10.30, 7304.29.10.40, 7304.29.10.50, 7304.29.10.60, 7304.29.10.80, 7304.29.20.10, 7304.29.20.20, 7304.29.20.30, 7304.29.20.40, 7304.29.20.50, 7304.29.20.60, 7304.29.20.80, 7304.29.31.10, 7304.29.31.20, 7304.29.31.30, 7304.29.31.40, 7304.29.31.50, 7304.29.31.60, 7304.29.31.80, 7304.29.41.10, 7304.29.41.20, 7304.29.41.30, 7304.29.41.40, 7304.29.41.50, 7304.29.41.60, 7304.29.41.80, 7304.29.50.15, 7304.29.50.30, 7304.29.50.45, 7304.29.50.60, 7304.29.50.75, 7304.29.61.15, 7304.29.61.30, 7304.29.61.45, 7304.29.61.60, 7304.29.61.75, 7305.20.20.00, 7305.20.40.00, 7305.20.60.00, 7305.20.80.00, 7306.29.10.30, 7306.29.10.90, 7306.29.20.00, 7306.29.31.00, 7306.29.41.00, 7306.29.60.10, 7306.29.60.50, 7306.29.81.10, and 7306.29.81.50.

---

[36] While Nanobest is involved in transactions related to Boly Pipe, it is not either solely an exporter or solely an importer; it is an affiliated middleman used by Boly Pipe for certain specific transactional roles.

[37] *See* JOL Tubular RFI at 5 and Exhibit 1; *see also* Boly Pipe RFI at 3-4. [                              description of an event                ] JOL Tubular, Boly Pipe, Nanobest, and Zhejiang Jianli. They are also affiliated with [ names of companies          ]. *See* JOL Tubular RFI at Exhibit 1; *see also* Boly Pipe RFI at Exhibit 4.

[38] *See* May 2026 Memorandum at Attachment 3, pages 1-3, 7-9, 21. Other websites indicate Boly Pipe was established in 2012 as well.

[39] *See* Boly Pipe RFI at 14-16, 18, 22, 43-44, 63, 65; *see also* Verification Report at 3-4.

[40] *See* Boly Pipe RFI at 3-4, 9, 14-15, 18-19, 43-44, and Exhibits 11.1-11.2; *see also* Verification Report at 3-4. Boly Pipe started sourcing steel billets [         country and date         ]. *See* Boly Pipe SRFI at 19 and Exhibit 11.2.

[41] *See* Boly Pipe SRFI at 6; *see also* Boly Pipe RFI at 18; *see also* Verification Report at 5.

6

The OCTG coupling stock covered by the order may also enter under the following HTSUS item numbers: 7304.39.00.24, 7304.39.00.28, 7304.39.00.32, 7304.39.00.36, 7304.39.00.40, 7304.39.00.44, 7304.39.00.48, 7304.39.00.52, 7304.39.00.56, 7304.39.00.62, 7304.39.00.68, 7304.39.00.72, 7304.39.00.76, 7304.39.00.80, 7304.59.60.00, 7304.59.80.15, 7304.59.80.20, 7304.59.80.25, 7304.59.80.30, 7304.59.80.35, 7304.59.80.40, 7304.59.80.45, 7304.59.80.50, 7304.59.80.55, 7304.59.80.60, 7304.59.80.65, 7304.59.80.70, and 7304.59.80.80.

The HTSUS subheadings are provided for convenience and customs purposes only; the written description of the scope of the order is dispositive.[42]

Boly Pipe's steel billets conform to the scope of the *AD/CVD Orders* in that they are made of steel, seamless, cylindrical, and of circular cross-section.[43] The *AD/CVD Orders* also cover OCTG that is "unfinished (including green tubes and limited service OCTG products)."[44] Likewise, the steel billets are unfinished because they undergo further production in Thailand to create the finished OCTG. Although the *AD/CVD Orders* address unfinished products such as green tubes and limited service OCTG products, they do not explicitly address whether unfinished products such as steel billets are included or excluded from the *AD/CVD Orders*. Furthermore, in a separate circumvention inquiry, Commerce preliminarily determined on August 15, 2025, that imports of seamless OCTG that were completed in Thailand using steel billets from China were circumventing the *AD/CVD Orders*.[45] As such, CBP was unable to determine whether the steel billets Boly Pipe imported from China were covered by the *AD/CVD Orders* and whether any production in Thailand removed them from the scope of the *AD/CVD Orders*.

During November 6-11, 2025, CBP visited Boly Pipe's facility and observed its production process using steel billets.[46] At verification, CBP officials reviewed sales and production transactions related to both JOL Tubular and CSP, because Boly Pipe supplied the covered merchandise to both importers in this EAPA investigation.[47] On December 1, 2025, CBP submitted a covered merchandise referral to Commerce.[48] In that referral, CBP stated it was "unable to determine whether the OCTG Boly Pipe produced in Thailand out of steel billets from China is covered merchandise" and asked Commerce to "determine whether the OCTG Boly Pipe produced in Thailand out of steel billets from China is covered merchandise subject to the *AD/CVD Orders*."[49] On April 22, 2026, Commerce notified CBP of its decision and stated that:

---

[42] *See AD/CVD Orders*.
[43] *See* Boly Pipe RFI at 6, 13-14, 59; *see also* Boly Pipe SRFI at 6; *see also* Verification Report at 6-7, 12, 23-25.
[44] *See AD/CVD Orders*.
[45] *See Oil Country Tubular Goods from the People's Republic of China: Preliminary Affirmative Determination of Circumvention of the Antidumping Duty and Countervailing Duty Orders*, 90 FR 40336 (August 19, 2025).
[46] *See* Verification Report at 1.
[47] *See* Verification Report.
[48] *See* Letter from CBP, "Covered Merchandise Referral Request for EAPA Investigation 8143 Involving the Antidumping and Countervailing Duty Orders on Certain Oil Country Tubular Goods from the People's Republic of China," dated December 1, 2025 (Covered Merchandise Referral); *see also* 19 C.F.R. § 165.16.
[49] *See* Covered Merchandise Referral at 3, 6.

7

> {T}he U.S. Department of Commerce (Commerce) determines that seamless oil country tubular goods (OCTG) produced in Thailand by Boly Pipe Co., Ltd. (Boly Pipe) using Chinese-origin steel billets, and exported from Thailand to the United States to Commercial Steel Products LLC (CSP) or JOL Tubular, Inc. (JOL Tubular), is covered by the scope of the antidumping duty (AD) and countervailing duty (CVD) orders on OCTG from the People's Republic of China (China).[50]

Commerce also stated that:

> Commerce finds it appropriate to anchor the application of its determination to the publication of the initiation of the circumvention inquiry, which reflects the point at which Commerce first examined whether the production configuration at issue was circumventing the Orders, rather than applying a broader retroactive approach to entries predating that analysis.  Accordingly, Commerce applies the circumvention finding in the CMI {covered merchandise inquiry} to the unliquidated entries at issue entered on or after December 18, 2024, the initiation date of the circumvention inquiry.[51]

*Effective Date of the Application of AD/CVD on the Covered Merchandise*

Importers proffered:

- Commerce specifically found that only entries using Chinese steel billet after the circumvention initiation date are within the scope of the *AD/CVD Orders*.[52] Accordingly, JOL Tubular's imports from Boly Pipe into the United States before December 18, 2024, were not covered merchandise and did not evade the *AD/CVD Orders*.[53]
- CBP has no independent authority to expand the applicability of AD/CVD beyond the date specified by Commerce.[54]

Alleger asserted:

- Commerce's discussion that JOL Tubular and CSP claim set a starting date for CBP's application of the *AD/CVD Orders* to that merchandise was instead a discussion of when Commerce determined that Commerce would take action to order a suspension of liquidation under Commerce's authority.[55]
- CBP's authority to act under the EAPA statute is independent of Commerce's authority and is not bound by the dates Commerce chooses to apply its separate authority.[56]

---

[50] *See* Covered Merchandise Letter; *see also* Covered Merchandise Decision at 1.
[51] *See* Covered Merchandise Decision at 6.
[52] *See* JOL Tubular Written Arguments at 14.
[53] *Id.* at 19.
[54] *See* CSP Written Arguments at 16.
[55] *See* Alleger Response to Written Arguments at 2, 8.
[56] *Id.* at 2, 7.

- All of 19 C.F.R. § 351 has to do with how Commerce will apply its authority and what procedures it will follow.  It contains no instructions nor deadlines for CBP.[57]

CBP Position:

The EAPA statute and regulations allow CBP to submit a covered merchandise referral to Commerce when it is not able to determine whether imported merchandise is subject to the AD/CVD order.[58]  For convenience, the statute and EAPA regulations pertaining to covered merchandise referrals and decisions are quoted in full:

> (A) IN GENERAL.—If the Commissioner {CBP} receives an allegation under paragraph (2) and is unable to determine whether the merchandise at issue is covered merchandise, the Commissioner {CBP} shall—
>> (i) refer the matter to the administering authority {Commerce} to determine whether the merchandise is covered merchandise pursuant to the authority of the administering authority {Commerce} under title VII; and
>> (ii) notify the party that filed the allegation, and any other interested party participating in the investigation, of the referral.
>
> (B) DETERMINATION; TRANSMISSION TO COMMISSIONER {CBP}.—After receiving a referral under subparagraph (A)(i) with respect to merchandise, the administering authority {Commerce} shall determine whether the merchandise is covered merchandise and promptly transmit that determination to the Commissioner {CBP}.[59]
>
> …
>
> (a) *When required.* A referral is required if at any point after receipt of an allegation, CBP cannot determine whether the merchandise described in an allegation is properly within the scope of an antidumping or countervailing duty order.
> (b) *Referral.* The referral may contain any necessary information available to CBP regarding whether the merchandise described in an allegation is subject to the relevant AD/CVD orders.
> (c) *Notice of referral.* TRLED {CBP's Trade Remedy Law Enforcement Directorate} will promptly notify the parties to the investigation of the date of the referral.
> (d) *Effect on investigation.* The time period required for any referral and determination by the Department of Commerce will not be counted toward the deadlines for CBP to decide on whether to initiate an investigation under § 165.15, whether to take interim measures under § 165.24, or the deadline to issue a determination as to evasion under § 165.27.
> (e) *Notice of decision.* CBP will place the determination by the Department of Commerce on the administrative record of CBP's proceeding and will electronically notify the parties to the investigation.[60]

---

[57] *Id.* at 8.
[58] *See* 19 U.S.C. § 1517(b)(4)(A); *see also* 19 C.F.R. § 165.16; *see also* 19 C.F.R. § 351.227.
[59] *See* 19 U.S.C. § 1517(b)(4).
[60] *See* 19 C.F.R. § 165.16.

Under the statute, it is CBP's covered merchandise referral that triggers Commerce's covered merchandise inquiry.[61] In that referral, CBP explains in what way it is "unable to determine whether the merchandise at issue is covered merchandise{.}"[62] Commerce then, as the administering authority, "shall determine whether the merchandise is covered merchandise…."[63] The statute does not authorize Commerce to make a determination applicable to EAPA beyond whether the merchandise at issue is covered merchandise. Commerce regulations state the following:

> The Secretary {Commerce} will issue a final determination as to whether the product that is the subject of the covered merchandise inquiry is covered by the scope of the order. As part of its determination, the Secretary {Commerce} will include an explanation of the factual and legal conclusions on which the final determination is based.[64]

As such, Commerce's regulations authorize Commerce to determine "whether the product that is the subject of the covered merchandise inquiry is covered by the scope of the order" and to explain the basis for that determination.[65] Commerce's regulations also expressly address suspension of liquidation and cash deposits, but where it determines merchandise subject to the covered merchandise referral is within the scope of the applicable orders, it merely instructs Commerce to "direct {CBP} to continue the suspension of liquidation of previously suspended entries and apply the applicable case deposit rate until appropriate liquidation instructions are issued," which would be the normal course of business when CBP independently determines merchandise is in scope.[66]

Here, Commerce made a determination that the merchandise at issue was covered merchandise *and* provided an effective date (December 18, 2024) for the application of AD/CVD duties on the covered merchandise.[67] Although CBP's covered merchandise referral to Commerce discussed the merchandise at issue, it contained no reference to or request for the effective date of the covered merchandise determination.[68] Thus, by identifying December 18, 2024, as the date from which AD/CVD duties would apply, Commerce went beyond determining whether the merchandise at issue constituted covered merchandise. This additional, unrequested information is at most advisory in nature and not controlling. Notably, this is not the form of typical suspension or liquidation instructions under Commerce's regulations.[69]

The statute and EAPA regulations already grant CBP the authority to determine the effective date of the application of AD/CVD duties on covered merchandise.[70] Because Commerce made

---

[61] *See* 19 U.S.C. § 1517(b)(4).

[62] *See* 19 U.S.C. § 1517(b)(4)(A).

[63] *See* 19 U.S.C. § 1517(b)(4)(B).

[64] *See* 19 C.F.R. § 351.227(e)(2).

[65] *Id.*

[66] 19 C.F.R. § 351.227 (l)(2)(i).

[67] *See* Covered Merchandise Decision at 6-6.

[68] *See* Covered Merchandise Referral.

[69] *See* 19 C.F.R. § 165.28(b) (indicating CBP will alert Commerce where evasion is detected and *if necessary* will request Commerce's assistance in identifying applicable duty assessment or cash deposit rates); *see also* 19 C.F.R. § 165.28(c) (stating that CBP will require posting of cash deposits on covered merchandise in accordance with separate instructions received by Commerce).

[70] *Id.*

a determination that the merchandise was in scope, CBP will apply that determination to all entries subject to the EAPA investigation, consistent with 19 U.S.C. § 1517(e) and 19 U.S.C. § 1517(d)(1)(A).[71]

Additionally, it is notable that Commerce also stated in its covered merchandise determination that

> Commerce *will* direct CBP to suspend liquidation and to require a cash deposit of estimated duties on unliquidated entries of inquiry merchandise that were entered, or withdrawn from warehouse, for consumption, on or after December 18, 2024, the date of publication of the initiation of this circumvention inquiry in the *Federal Register*.[72]

The use of "will" here acknowledges that the covered merchandise determination is restricted to discerning whether merchandise is within the scope of the relevant AD/CVD orders and does not constitute suspension and/or liquidation instructions as addressed above.  CBP may suspend liquidation of entries covered by an EAPA investigation beginning when interim measures are enacted pursuant to 19 U.S.C. § 1517(e).  Unless otherwise noted, the evasion determination applies equally to all POI entries, as further clarified by the discussion of *Diamond Tools Technology LLC v. United States*, 609 F.Supp.3d 1378 (Ct. Int'l Trade 2021) (hereinafter "*Diamond Tools*") below.[73]  Furthermore, publicly available Commerce liquidation instructions expressly refer to CBP's independent authority under the EAPA to suspend, continue to suspend, or extend liquidation of entries.[74]  Thus, Commerce distinguishes between entries subject to suspension, extension, and liquidation under its authority and entries subject to subject to suspension, extension, and liquidation under EAPA's authority.

In *Diamond Tools*, the CIT upheld CBP's interpretation that Commerce basing a covered merchandise decision on results of a circumvention inquiry does not prevent CBP from determining merchandise entered before the initiation of the circumvention inquiry is covered and subject to AD/CVD duties.[75]  This case pertained to EAPA investigation 7184 on diamond sawblades, wherein CBP submitted a covered merchandise referral to Commerce on November 21, 2017.[76]  Commerce separately initiated a circumvention inquiry on December 1, 2017, concerning whether Chinese cores and segments used to produce diamond sawblades in Thailand were circumventing the 2009 AD/CVD Order on diamond sawblades from China.[77]  Commerce subsequently based its covered merchandise referral decision on the results of the circumvention inquiry.[78]  The CIT determined that the EAPA statute "is silent as to whether Commerce in using its findings from a separate circumvention inquiry to make its 'covered merchandise' determination under the EAPA consequently imposes a temporal limitation on its 'covered

---

[71] *AD/CVD Orders*.

[72] *See* Covered Merchandise Decision at 2 quoting *Oil Country Tubular Goods From the People's Republic of China: Final Affirmative Determination of Circumvention of the Antidumping Duty and Countervailing Duty Orders*, 91 FR 9811 (February 27, 2026) (emphasis added).

[73] *See* 19 U.S.C. § 1517(e).; *see also* 19 C.F.R. §§ 165.24, 165.27-165.28.

[74] *See* https://www.customsmobile.com/adcvd/6173403.

[75] *See Diamond Tools*.

[76] *Id.* at 1330.

[77] *Id.*

[78] *Id.*

merchandise' response to {CBP}."[79]  Nevertheless, the CIT concluded that "entries made before December 1, 2017, are 'covered merchandise{.}'"[80]

The CIT ultimately agreed with CBP's interpretation that Commerce's circumvention inquiry was a "'distinct' administrative proceeding that had no bearing on {CBP's} independent statutory authority with respect to entries subject to an EAPA investigation."[81]  The CIT upheld CBP's position that Commerce's decision was limited in function in EAPA investigations to discerning whether merchandise is in or out of scope.[82]  The court concluded that the purpose of EAPA was to "empower" the federal government to "thwart evasion at earlier stages to improve enforcement of U.S. trade laws" and that CBP being bound to Commerce's later circumvention timeline would "restrict {CBP's} authority" to determine that entries during the POI were covered and subject to the EAPA "contrary to congressional intent underlying the EAPA statute and {CBP's} authority to exercise its statutory authority."[83]  Thus, notwithstanding the December 1, 2017 initiation date of the circumvention inquiry, the Court recognized that entries predating that date could still constitute covered merchandise in the EAPA proceeding.[84]

*Diamond Tools*' circumstances were similar to this case in that both involved a covered merchandise inquiry that drew their respective conclusions from a related circumvention inquiry. In this case, the initiation date of the circumvention inquiry on steel billets and OCTG was December 18, 2024.  Because the Court in *Diamond Tools* agreed that entries before the circumvention inquiry's initiation date (there December 1, 2017) were covered merchandise, JOL Tubular's and CSP's entries from Boly Pipe before the initiation date of the circumvention inquiry (December 18, 2024) and within EAPA's POI are covered merchandise as well.  Boly Pipe's OCTG is therefore covered merchandise for which it is liable for AD/CVD duties.  In addition, unlike *Diamond Tools*, where during the original investigation Commerce had included a statement regarding how it would determine country of origin of the merchandise, Commerce in this case had not made any specific statements regarding the scope of the order.  Thus, the importer made false statements or omissions when it did not declare the merchandise as subject to the *AD/CVD Order* at the time of the entry.

*Zhejiang Jianli*

JOL Tubular and Boly Pipe affirmed they were affiliated with Zhejiang Jianli Co. Ltd (Zhejiang Jianli), which was one of the Chinese OCTG producers that participated in Commerce's original AD/CVD proceedings on OCTG from China.[85]  After those proceedings, Zhejiang Jianli set up Boly Pipe in Thailand in 2012.[86]

---

[79] *Id.* at 1349.
[80] *Id.* at 1347.
[81] *Id.* at 1350.
[82] *Id.*
[83] *Id.* at 1351.
[84] *Id.* at 1350.
[85] *See* JOL Tubular RFI at 5 and Exhibit 1; *see also* Boly Pipe RFI at 8.  [          description of an employee          ] JOL Tubular, Boly Pipe, Nanobest, and Zhejiang Jianli.  They are also affiliated with [                            names of companies          ].  *See* JOL Tubular RFI at Exhibit 1; *see also* Boly Pipe RFI at Exhibit 4; *see also* AD/CVD *Orders*; *see also* JOL Tubular Allegation at Exhibits 1, 10.
[86] *See* May 2026 Memorandum at Attachment 3, pages 1-3.

JOL Tubular and Boly Pipe claimed that Zhejiang Jianli could not produce OCTG during the POI because its API 5CT certification for OCTG expired in 2012.[87]  However, the lack of API 5CT certification does not, by itself, prevent a company from producing OCTG.  Hypothetically, a company without API 5CT certification could produce OCTG, transship it to another company that has API 5CT certification, and then export it to the United States under the other company's name.  Thus, JOL Tubular/Boly Pipe's claims that the lack of API 5CT certification prevents Zhejiang Jianli from producing OCTG are without merit.

Certain other claims concerning Zhejiang Jianli may indicate that JOL Tubular and Boly Pipe were not entirely forthcoming in the responses they submitted to CBP.  For example, JOL Tubular/Boly Pipe claimed that "Zhejiang Jianli also did not have the production equipment that could potentially produce OCTG" because it had "all been sold to Boly Pipe and installed at Boly Pipe."[88]  Boly Pipe provided machine purchase documents that indicated it imported some of its machinery from a company named [      company name     ] and other machinery from its [          names of companies          ].[89]  However, even if all of Boly Pipe's machinery came from [name] and Zhejiang Jianli, that does not necessarily indicate that Zhejiang Jianli sent "all" its OCTG production machinery to Boly Pipe.  Additionally, Boly Pipe's statements and documents did not address whether all the machinery contained at its two Chinese subsidiaries, Zhejiang Jianli Steel Pipe Co., Ltd. and Jiangsu Jianli Steel Pipe Co., Ltd, were also sent to Boly Pipe.[90]  As such, Zhejiang Jianli and its Chinese affiliates may retain OCTG machinery.

Open-source evidence online indicates that Zhejiang Jianli retains OCTG machinery and produces OCTG.  Worldoils.com referred to the "Zhejiang Jianli Group" as a producer of OCTG in February 2025.[91]  Zhejiang Jianli's website also, as of November 2024, claimed it was a producer of "oil pipe."[92]  Finally, Bloomberg.com described Zhejiang Jianli as "an international steel tube manufacturer" that "manufactures and distributes seamless steel pipe, bearing steel pipe, and oil pipe" as of February 2025.[93]  These references to Zhejiang Jianli's OCTG production occurred 12 years after the 2012 expiration of its API 5CT certification and [ numbers ] its OCTG machinery had allegedly "all been sold to Boly Pipe and installed at Boly Pipe."[94]  Further, this investigation's POI began on January 14, 2024; as such, these website screenshots were contemporaneous with the POI and not outdated.  Thus, these websites' statements contradict JOL Tubular's and Boly Pipe's claims that all of Zhejiang Jianli's machinery was sent to Boly Pipe and indicate that Zhejiang Jianli had OCTG production equipment and used it to produce OCTG during the POI.  These contradictions also cast doubt on

---

[87] *See* JOL Tubular RFI at 5 and Exhibit 15; *see also* Boly Pipe RFI at 8.

[88] *See* JOL Tubular Written Arguments at 8; *see also* Boly Pipe RFI at 8.  On page 11, Boly Pipe also claimed that Zhejiang Jianli's "equipment had been sold."

[89] *See* Boly Pipe RFI at Exhibit 13; *see also* Boly Pipe SRFI at SQ1-1 and SQ1-3.

[90] *See* JOL Tubular Allegation at Exhibit 9, pages 3, 12.

[91] *See* May 2026 Memorandum at Attachment 3, page 54.

[92] *See* JOL Tubular Allegation at Exhibit 9, page 14.  Zhejiang Jianli's website also claimed it was a producer of "bearing steel pipe."

[93] *See* May 2026 Memorandum at Attachment 3, page 53.

[94] *See* JOL Tubular Written Arguments at 8; *see also* Boly Pipe RFI at 8.  On page 11, Boly Pipe also claimed that Zhejiang Jianli's "equipment had been sold."  Zhejiang Jianli purportedly sent "all" its OCTG machinery to Boly Pipe in [ year timeframe ].  *See* Boly Pipe SRFI at Exhibit SQ1-1.

the veracity of JOL Tubular's and Boly Pipe's other claims, and likewise cast doubt on the origin of the product imported by CSP from Boly Pipe.

*Yifan Shipping Thailand*

Boly Pipe claimed that "… Nanobest and Boly Pipe did not import OCTG or any other kind of mother pipes or finished or semi-finished steel pipes or green pipes into Thailand" and "Boly Pipe or Nanobest never imported hollow steel billets."[95]  However, Boly Pipe's relationship with Yifan Shipping Thailand indicates otherwise.

Boly Pipe used Yifan Shipping Thailand to assist with the Thai import declaration process, to transport imported items from the import port to Boly Pipe's facility, to transport OCTG from Boly Pipe's facility to the export port, and to assist with the Thai export declaration process.[96] On a logistics website, Yifan Shipping Thailand expressed its willingness to participate in transshipment, stating "{c}ustomers looking to ship Chinese products to the US can reroute the cargo to Thailand and depart from here, alleviating the US's trade embargo policy for Chinese products."[97]  Correspondingly, [                                        description of an event and the timeframe                ].[98]  These [ description of an event                                                            ], which was corroborated by evidence in EAPA investigations 7890 and 8164 that Yifan Shipping Thailand helped these companies import hollow steel billets, mother pipes, or other semi-complete pipe from China.[99]

One [                              month and year and description of a conversation ]…."[100]  Another [ month and year and amounts of product.  Conversation description                ].[101] It is noteworthy that [                              description of product                            ] by Boly Pipe's statement that they imported steel billets, which are cylindrical steel bars without holes, which further [          an event              ].[102]  Thus, these [ description of an event and product description                              ]."[103]

Because the [ conversation    ] indicate that Boly Pipe did not always [ description of product and conversations                              ], they indicate the falsity of Boly Pipe's claims that "… Nanobest and Boly Pipe did not import OCTG or any other kind of mother pipes or finished or semi-finished steel pipes or green pipes into Thailand" and "Boly

---

[95] *See* Boly Pipe RFI at 18; *see also* Boly Pipe SRFI at 6.
[96] *See* Boly Pipe RFI at 12-13; *see also* NOI at 9; *see also* JOL Tubular CF-28 Response.
[97] *See* May 2025 Memorandum at Attachment 4, page 5.
[98] *Id.* at Attachment 2.
[99] *Id.*; *see also* May 2026 Memorandum at Attachment 9, pages 4, 33-35; *see also* https://www.cbp.gov/document/guidance/eapa-cons-case-8164-various-importers-notice-determination-evasion-march-16-2026.
[100] *See* May 2025 Memorandum at Attachment 2, page 4.
[101] *Id.*
[102] *See* Boly Pipe RFI at 18; *see also* Boly Pipe SRFI at 6.
[103] *See* May 2025 Memorandum at Attachment 2, page 3.

Pipe or Nanobest never imported hollow steel billets."[104]  Moreover, JOL Tubular also claimed that "Boly Pipe never engaged this company {Yifan Shipping Thailand} to purchase and import any covered merchandise OCTG or other similar "mother pipes" or any other form of "semi-finished pipes" into Thailand."[105]  These contradictions cast additional doubt on the reliability of Boly Pipe's claims.

*BMD*

BMD International Inc. (BMD), a Texas-based importer and affiliate of JOL Tubular and Boly Pipe, imported a shipment from Boly Pipe that arrived in the United States on July 9, 2025.[106]  Boly Pipe claimed that "[                                        dates and description of an event                    ]."[107]  JOL Tubular and Boly Pipe further claimed that

> In early May 2025, Nanobest shipped the goods (tolled by Boly Pipe) to JOL, and JOL's sales person contacted the customers in the market for the availability of the goods.  Then the customer, Mr. [                                        description of an event                        ] provided the proforma invoice to BMD under the name of Nanobest to confirm this sale.[108]

Boly Pipe also stated that "… after the negotiation with BMD, this sale was changed to sell to BMD directly on [            date        ]…."[109]  JOL Tubular provided emails between [ names of individuals ] that ostensibly aligned with the above statements.  However, there are several indications that JOL Tubular/Boly Pipe created these emails to substantiate its BMD narrative that they were not affiliated with BMD and that the shipment to BMD was originally intended for JOL Tubular.  In other words, JOL Tubular/Boly Pipe wanted to hide that they created BMD to evade CBP's enforcement actions for this EAPA investigation.

These emails begin on [   date       ] and in one [ date and description of conversation                    ]…."[110]  On [ date and description of conversation between individuals                    ]."[111]  However, during verification CBP observed that the bills of lading for this shipment were issued on [            date         ], a few days before these emails, and yet they already listed [ description of company                ].[112]  As such, BMD and not JOL Tubular was the original intended recipient of the shipment.  Because the bills of lading did not contain any reference whatsoever to JOL Tubular, they contradict [ date and description of an event                        ]."[113]  The bills of lading's [              date              ] issuance date and their listing of [

---

[104] *Id.* at Attachment 2; *see also* Boly Pipe RFI at 18; *see also* Boly Pipe SRFI at 6.
[105] *See* JOL Tubular Written Arguments at 10.
[106] *See* May 2026 Memorandum at Attachment 4, page 3.
[107] *See* Boly Pipe SRFI 2 at 4-5.
[108] *See* JOL Tubular SRFI 2 at 3-4; *see also* Boly Pipe SRFI 2 at 3-4.
[109] *See* Boly Pipe SRFI 2 at 4-5.
[110] *See* JOL Tubular SRFI 2 at Exhibit SQ2-3.
[111] *Id.*
[112] *See* Verification Exhibits at Exhibit 12, pages 10-12; *see also* Boly Pipe SRFI 2 at 53.
[113] *Id.*; *see also* JOL Tubular SRFI 2 at Exhibit SQ2-3.

description of the company                    ] also contradict [
date and description of an individual and an event that occurred                    ].
These facts indicate that JOL Tubular/Boly Pipe surreptitiously created these emails to
substantiate their narrative that "Nanobest shipped the goods (tolled by Boly Pipe) to JOL" and
were [          an event                    ].[114]

Details from the shipment's invoice and packing lists contradict JOL Tubular and Boly Pipe's
narrative as well.  The shipment's invoice and two packing lists were issued to [
company name and date                    ].[115]  Correspondingly, Boly Pipe's sales system
lists [                    company name and date                    ].[116]  The fact that these
documents were issued to [    name of company       ] contradicts JOL Tubular and Boly Pipe's
claims that [              description of an event and date                    ].  The
shipment's invoice and packing lists also contradict JOL Tubular and Boly Pipe's claim that
"Mr. [                                        individual names and companies
names and an event                    ]" because the bill of lading indicated that
shipment departed Thailand on [      date           ], and the invoice and packing list were
already issued to [                    description of an event
]."[117]

The validity of JOL Tubular's and Boly Pipe's repeated claims that it is not affiliated with BMD
are quite doubtful as well.  JOL Tubular and Boly Pipe stated that "Neither JOL, nor Nanobest,
nor Boly Pipe is affiliated with BMD.  No one at BMD has ever worked for JOL, Nanobest, or
Boly Pipe."[118]  JOL Tubular also claimed "Boly Pipe had no affiliated companies that produced
or sold OCTG during the POI."[119]  BMD's director [
description of an individual and an event                    ].[120]  However, several pieces of
record evidence contradict JOL Tubular and Boly Pipe's claims and so indicate that BMD is
affiliated with them.

First, BMD was registered in Texas on May 12, 2025.[121]  This registration date was only six days
after CBP announced to JOL Tubular the initiation of its EAPA investigation.[122]  Thus, the
timeline is consistent with Boly Pipe/JOL Tubular setting up BMD in response to the EAPA
investigation.  Furthermore, the bill of lading from Boly Pipe's shipment to BMD was issued on
[      date           ].[123]  Although the bill of lading was issued [      numbers       ] before
BMD's registration, it [              description of company                    ].[124]  Thus, Boly Pipe
arranged the shipment to BMD before it was registered as a company and so Boly Pipe knew

---

[114] *See* JOL Tubular SRFI 2 at 3-4; *see also* Boly Pipe SRFI 2 at 3-4.
[115] *See* Verification Exhibits at Exhibit 12, pages 2-3, 5-7, 9, 13; *see also* Boly Pipe SRFI 2 at 51-52.
[116] *See* Verification Exhibits at Exhibit 12, pages 2-3.
[117] *See* JOL Tubular SRFI 2 at 3-4; *see also* Boly Pipe SRFI 2 at 3-4; *see also* Verification Exhibits at Exhibit 12, pages 3, 5-7, 9-13.
[118] *See* JOL Tubular SRFI 2 at 4; *see also* Boly Pipe SRFI 2 at 4.
[119] *See* JOL Tubular Written Arguments at 7.
[120] *See* May 2026 Memorandum at Attachment 6, pages 7-8.
[121] *Id.* at Attachment 4, page 1, and Attachment 7.
[122] *See* CBP Email, "CBP EAPA Investigation 8143 - Notice of Initiation of Investigation and Interim Measures," dated May 6, 2025.
[123] *See* Verification Exhibits at Exhibit 12, pages 10-12; *see also* Boly Pipe SRFI 2 at 53.
[124] *Id.*

about BMD before it existed.  This advance knowledge of a soon-to-exist company suggests Boly Pipe set up and is affiliated with BMD.

Corroborating that, BMD was registered by the same person that registered Boly Pipe's affiliate JOL Tubular, [      name         ].[125]  JOL Tubular stated that [
individual name and description of position and responsibilities                             ]."[126]
The fact that JOL Tubular's [    title        ] registered BMD is consistent with them being affiliated.  Also, BMD was registered at [       name          ]'s address and [     name       ] was listed at [        name            ]'s address, which indicates BMD was attempting to hide its actual address.[127]

BMD only imported the one shipment from Boly Pipe.[128]  The fact that BMD did not import any other shipments suggests JOL Tubular/Boly Pipe organized this scheme solely to import Boly Pipe's merchandise into the United States and avoid enforcement action by CBP.  However, when CBP questioned JOL Tubular and Boly Pipe about BMD, they had no reason to continue their use of BMD's company name because CBP was now aware of its existence.  Consequently, these facts reflect that they are affiliated.

Notably, one of the emails purportedly from [       name        ] to CBP lists "[        name ]" next to the email address in the email's From line.[129]  The surname and initials of "[   name ]" likely refer to [          individual name and their title               ].[130]  Boly Pipe claimed that Aspen Zhou "has no relationship with BMD."[131]  However, the presence of [ name of individual              ]'s name in the From line indicates "[    name        ]"'s email address belongs to [       names of individuals            ].[132]  He then attached [ name          ]'s name in the signature block to make it appear it originated from him.

Finally, JOL Tubular stated that its telephone number was [      phone number      ].[133]  JOL Tubular's vice president Aspen Zhou and its account manager [             name of individual ], list that same telephone number as their office number.[134]  However, BMD's director "[ name      ]" also listed the same [     phone number         ] telephone number in his email signature.[135]  Corroborating that, BMD's [                              description of an

---

[125] *See* May 2026 Memorandum at Attachment 4, page 1-2.
[126] *See* JOL Tubular RFI at 8, 25.
[127] *See* May 2026 Memorandum at Attachment 4, page 1, and Attachment 7; *see also* JOL Tubular RFI at 8.
[128] Although CBP included on the record information about several shipments from "BMD," CBP notes that BMD shipments dated 2011-2012 are not related to the BMD company discussed in this memo. Additionally, these shipments did not contain OCTG or other similar merchandise.  *See* May 2026 Memorandum at Attachments 4, 10.
[129] *See* May 2026 Memorandum at Attachment 6, page 3.
[130] *See* JOL Tubular RFI at 1, 25.
[131] *See* JOL Tubular SRFI 2 at 4.
[132] *See* May 2026 Memorandum at Attachment 6, page 3.
[133] *See* JOL Tubular RFI at 4 and Exhibit 21.1, page 1; Exhibit 21.2, page 1; *etc.*
[134] *Id.* at 1, 4, 24-25 and at Exhibit 13, pages 3, 5, 51, 108, *etc.*; *see also* JOL Tubular CF-28 Response at 5, 7-8, 10.
Aspen Zhou and [  name        ] both have [   names of companies           ], which indicates each of them works for both companies.  *See* JOL Tubular RFI at 4, 28 and Exhibit 13, pages 3-5, 8, 49, 51, *etc.*; *see also* JOL Tubular SRFI 2 at 45.
[135] *See* May 2026 Memorandum at Attachment 6, page 3.

event and a telephone number                                    ]'s telephone number.[136]  BMD did not list any other telephone numbers.[137]  Thus, BMD's use of JOL Tubular's main telephone number as its sole telephone number further evidences affiliation between the companies.  Additionally, as discussed above, the record shows that JOL Tubular founded BMD.

In light of the preceding evidence, CBP finds that substantial evidence exists that BMD is affiliated with JOL Tubular/Boly Pipe.  Because JOL Tubular and Boly Pipe falsely denied being affiliated with BMD, CBP finds that JOL Tubular and Boly Pipe made false statements concerning their affiliation with BMD.[138]  JOL Tubular/Boly Pipe made these false statements because JOL Tubular created BMD to evade CBP's scrutiny on JOL Tubular imports from Boly Pipe.  The purpose of these false statements was to distance JOL Tubular from BMD.  These false statements, along with JOL Tubular/Boly Pipe's surreptitious creation of emails, cast serious doubt on the validity of the statements and documentation both companies presented to CBP.  CSP's entries are similarly impacted, because they were supplied by Boly Pipe.

*Adverse Inferences*

CBP's regulations at 19 C.F.R. § 165.6(a) state that if "the importer, or the foreign producer or exporter of the covered merchandise fails to cooperate and comply to the best of its ability with a request for information made by CBP, CBP may apply an inference adverse to the interests of that party in selecting from among the facts otherwise available to make the determination as to evasion…."[139]  CBP's regulations also state that "Any interested party that provides a material false statement or makes a material omission or otherwise attempts to conceal material facts at any point in the proceedings may be subject to adverse inferences (see § 165.6)…."[140]  The importer JOL Tubular and foreign producer or exporter of the covered merchandise Boly Pipe each made false statements concerning their affiliation with BMD.  JOL Tubular/Boly Pipe's statements and their falsification of email evidence are discussed in the BMD section above.  These false statements were material because they were intended to hide Boly Pipe's OCTG shipment to their affiliate BMD to bypass the EAPA investigation's interim measures on JOL Tubular.  These false statements are also material because they indicate JOL Tubular/Boly Pipe's willingness to resort to deceptive tactics when it is in their self-interest.  As such, they cast doubt on the validity of the other information JOL Tubular and Boly Pipe submitted to CBP.  Furthermore, they did not cooperate to the best of their ability with CBP's requests for information by making these false statements.[141]

CBP is drawing an inference that is adverse to the interests of JOL Tubular and Boly Pipe by inferring that all of the OCTG Boly Pipe exported to JOL Tubular and CSP during the POI was Chinese-origin OCTG.[142]  To draw these adverse inferences, CBP is relying on factual information on the record, including [

---

[136] *Id.* at Attachment 6, page 5.
[137] *See* May 2026 Memorandum at Attachment 6, page 3.
[138] *See* JOL Tubular SRFI 2 at 1, 4; *see also* Boly Pipe SRFI 2 at 1, 4; *see also* Verification Report at 12; *see also* JOL Tubular Written Arguments at 8-9.
[139] *See also* 19 U.S.C. § 1517(c)(3)(A).
[140] *See* 19 C.F.R. § 165.5(b)(3).
[141] *See* 19 U.S.C. § 1517(c)(3); *see also* 19 C.F.R. § 165.5(b)(3) and § 165.6.
[142] *See* 19 USC 1517(c)(3); *see also* 19 CFR 165.6.

description of an event and an the name of an individual                              ] Thai companies transship Chinese product to the United States as a product of Thailand," a declaration in the Allegations indicating that [

description of an event                                              ], evidence that JOL Tubular and Boly Pipe's parent company Zhejiang Jianli remains an OCTG producer in China, and evidence that Boly Pipe [          product and country names          ] via the freight forwarder Yifan Shipping Thailand, an entity known to assist in evading AD/CVD.[143]

Although CBP is applying adverse inferences with respect to JOL Tubular and Boly Pipe, enough evidence exists on the record to determine that there is evasion without the application of adverse inferences.  Therefore, CBP determines that substantial evidence exists demonstrating that, by means of material false statements or material omissions, JOL Tubular and CSP entered Chinese-origin OCTG subject to the *AD/CVD Orders* from Boly Pipe and failed to pay the requisite duties.

**Determination as to Evasion**

In conclusion, the previously discussed facts on the record establish that Chinese-origin OCTG was transshipped through Thailand and imported into the United States.  Furthermore, evidence on the record indicates that JOL Tubular and CSP subsequently entered the Chinese-origin OCTG into the United States as type 01 entries that evaded the payment of AD/CVD duties on OCTG from China.[144]  CBP determines that substantial evidence exists demonstrating that, by means of material false statements or material omissions, JOL Tubular and CSP entered Chinese-origin OCTG that was transshipped through Thailand into the United States.  The OCTG that JOL Tubular and CSP entered during the POI is subject to the AD/CVD rates on OCTG from China.[145]  Because JOL Tubular and CSP did not declare that the merchandise was subject to the *AD/CVD Orders* on entry, the requisite cash deposits were not collected on the merchandise.

**Actions Taken Pursuant to the Affirmative Determination as to Evasion**

In light of CBP's determination that substantial evidence demonstrates that JOL Tubular and CSP entered covered merchandise into the customs territory of the United States through evasion, and pursuant to 19 U.S.C. § 1517(d) and 19 C.F.R. § 165.28, CBP will suspend or continue to suspend the entries subject to this investigation, until instructed to liquidate.  For those entries previously extended in accordance with Interim Measures, CBP will rate adjust and change those entries to type 03 and continue suspension until instructed to liquidate these

---

[143] *See* JOL Tubular Allegation at 1, 7-10 and Exhibits 4, 6-9, 12; *see also* CSP Allegation at 1, 7-10 and Exhibits 4, 6-9, 12; *see also* May 2026 Memorandum at Attachment 3, pages 53-54; *see also* May 2025 Memorandum at Attachment 3, pages 2-5.

[144] Entry type "01" is the code that CBP requires importers use to designate a standard consumption entry that is not subject to AD/CVD duties.  *See* https://www.cbp.gov/trade/automated/ace-transaction-details.

[145] The Importers' OCTG entries are subject to the "PRC-Wide Entity" rate of 99.14 percent for AD case A-570-943 and the "All Others" rate of 13.41 percent for CVD case C-570-944.  These two rates equal a combined rate of 112.55 percent.  *See AD/CVD Orders*.

entries.[146]  Finally, CBP will continue to evaluate JOL Tubular's and CSP's continuous bonds in accordance with CBP's policies and may require single transaction bonds as appropriate.  None of the above actions preclude CBP or other agencies from pursuing additional enforcement actions or penalties.

Sincerely,

Victoria Cho
Director, Enforcement Operations Division
Trade Remedy Law Enforcement Directorate
CBP Office of Trade

---

[146] Entry type "03" is the code that CBP requires importers use to designate a consumption – Antidumping/ Countervailing Duty entry as subject to AD and/or CVD duties.  The instructions for CBP Form 7501 (Entry Summary) state that code 03 shall be used for entries subject to AD/CVD duties.  *See* https://www.cbp.gov/trade/automated/ace-transaction-details.

# ATTACHMENT 2

*Oil Country Tubular Goods from the People's Republic of China: Issues and Decision Memorandum for the Final Determination of Covered Merchandise Inquiry – EAPA Inv. 8143* (Dep't Commerce Apr. 21, 2026)

Barcode: 4915228-02 A-570-943 CMI - Covered Merchandise Inquiry  CBP EAPA Inv. No. 8143

UNITED STATES DEPARTMENT OF COMMERCE
International Trade Administration
Washington, D.C. 20230

A-570-943/C-570-944
Covered Merchandise Inquiry
CBP EAPA Inv. 8143
**Public Document**
E&C/OVI:  HAT

April 21, 2026

**MEMORANDUM TO:**    Christopher Abbott
Deputy Assistant Secretary
  for Policy and Negotiations,
  performing the non-exclusive functions and duties
  of the Assistant Secretary for Enforcement and Compliance

**FROM**:    Scot Fullerton
Acting Deputy Assistant Secretary
  for Antidumping and Countervailing Duty Operations

**SUBJECT:**    Oil Country Tubular Goods from the People's Republic of China: Issues and Decision Memorandum for the Final Determination of Covered Merchandise Inquiry – EAPA Inv. 8143

## I.    SUMMARY

In accordance with 19 CFR 351.227, the U.S. Department of Commerce (Commerce) determines that seamless oil country tubular goods (OCTG) produced in Thailand by Boly Pipe Co., Ltd. (Boly Pipe) using Chinese-origin steel billets, and exported from Thailand to the United States to Commercial Steel Products LLC (CSP) or JOL Tubular, Inc. (JOL Tubular), is covered by the scope of the antidumping duty (AD) and countervailing duty (CVD) orders on OCTG from the People's Republic of China (China).[1]  This determination provides Commerce with sufficient information to respond to a covered merchandise referral from U.S. Customs and Border Protection (CBP).[2]

---

[1] *See Certain Oil Country Tubular Goods from the People's Republic of China:  Final Affirmative Countervailing Duty Determination, Final Negative Critical Circumstances Determination*, 74 FR 64045 (December 7, 2009), as amended in *Certain Oil Country Tubular Goods from the People's Republic of China:  Amended Final Affirmative Countervailing Duty Determination and Countervailing Duty Order*, 75 FR 3203 (January 20, 2010); *see also Certain Oil Country Tubular Goods from the People's Republic of China:  Final Determination of Sales at Less Than Fair Value, Affirmative Final Determination of Critical Circumstances and Final Determination of Targeted Dumping*, 75 FR 20335 (April 19, 2010), as amended in *Certain Oil Country Tubular Goods from the People's Republic of China:  Amended Final Determination of Sales at Less Than Fair Value and Antidumping Duty Order*, 75 FR 28551 (May 21, 2010) (collectively, the *Orders*).
[2] *See* Memorandum, "Receipt of Covered Merchandise Referral from U.S. Customs and Border Protection," dated December 22, 2025, containing CBP's Letter, "Covered Merchandise Referral Request for EAPA Investigation 8143 Involving the Antidumping and Countervailing Duty Orders on Certain Oil Country Tubular Goods from the People's Republic of China," dated December 1, 2025 (CBP's EAPA 8143 Letter).

Filed By: Brian Davis, Filed Date: 4/22/26 12:18 PM, Submission Status: Approved

We recommend that you approve the positions described in the "Discussion of the Issues" section of this memorandum.  Below is a complete list of the issues for which we have received comments from interested parties in this covered merchandise inquiry:

Comment 1:  Effective Date of Application of Duties
Comment 2:  Whether Steel Billets are Subject Merchandise

## II.    BACKGROUND

On December 1, 2025, Commerce received a sufficient covered merchandise referral from CBP regarding CBP Enforce and Protect Act (EAPA) Investigation No. 8143 which concerns the *Orders*.[3]  On December 31, 2025, Commerce initiated a covered merchandise inquiry (CMI) to determine whether seamless OCTG produced by Boly Pipe in Thailand using steel billets from China and exported to its customers, CSP and JOL Tubular, in the United States is subject to the scope of the *Orders*.[4]  Pursuant to 19 CFR 351.227(d)(1), Boly Pipe, Nanobest Limited (Nanobest), and JOL Tubular (collectively, the Boly Pipe Group) and CSP timely submitted comments and factual information addressing the initiation.[5]

On February 27, 2026, Commerce affirmatively determined in a separate circumvention inquiry that imports of seamless OCTG completed in Thailand using steel billets produced in China were circumventing the *Orders*.[6]  We applied this determination on a country-wide basis and established importer and exporter certification and document requirements permitting companies to certify that specific entries of seamless OCTG from Thailand are not subject to the *Orders* if the merchandise is not made with Chinese-origin steel billets, or is made with an input other than steel billets.[7]  For all entries that have not met these requirements, the "Suspension of Liquidation and Cash Deposit Requirements" section of the *Final Circumvention Determination Federal Register* notice indicates that "Commerce will direct CBP to suspend liquidation and to require a cash deposit of estimated duties on unliquidated entries of inquiry merchandise that were entered, or withdrawn from warehouse, for consumption, on or after December 18, 2024, the date of publication of the initiation of this circumvention inquiry in the *Federal Register*."[8]

## III.    SCOPE OF THE *ORDERS*

The merchandise covered by the *Orders* are certain OCTG, which are hollow steel products of circular cross-section, including oil well casing and tubing, of iron (other than cast iron) or steel

---

[3] *See* CBP's EAPA 8143 Letter; *see also Orders*.
[4] *See Oil Country Tubular Goods From the People's Republic of China:  Notice of Covered Merchandise Referral and Initiation of Covered Merchandise Inquiry,* 90 FR 61375 (December 31, 2025) (*Initiation Notice*).
[5] *See* Boly Pipe Group's Letter, "Comments on CBP Covered Merchandise Referral and Commerce's Initiation of Covered Merchandise Inquiry," dated January 30, 2026 (Boly Pipe Group's Initiation Comments); *see also* CSP's Letters, "Notice of Covered Merchandise Referral and Initiation of Covered Merchandise Inquiry – Factual Information," dated January 30, 2026; and "Notice of Covered Merchandise Referral and Initiation of Covered Merchandise Inquiry – Comments and Factual Information," dated January 30, 2026 (CSP's Initiation Comments).
[6] *See Oil Country Tubular Goods From the People's Republic of China:  Final Affirmative Determination of Circumvention of the Antidumping Duty and Countervailing Duty Orders*, 91 FR 9811 (February 27, 2026) (*Final Circumvention Determination*).
[7] *Id.*, 91 FR at 9812-9813.
[8] *Id.*, 91 FR at 9813.

Filed By: Brian Davis, Filed Date: 4/22/26 12:18 PM, Submission Status: Approved

(both carbon and alloy), whether seamless or welded, regardless of end finish (*e.g.*, whether or not plain end, threaded, or threaded and coupled) whether or not conforming to American Petroleum Institute (API) or non-API specifications, whether finished (including limited service OCTG products) or unfinished (including green tubes and limited service OCTG products), whether or not thread protectors are attached.  The scope of the *Orders* also covers OCTG coupling stock.  Excluded from the scope of the *Orders* are casing or tubing containing 10.5 percent or more by weight of chromium; drill pipe; unattached couplings; and unattached thread protectors.

The merchandise covered by the *Orders* is currently classified in the Harmonized Tariff Schedule of the United States (HTSUS) under item numbers:  7304.29.10.10, 7304.29.10.20, 7304.29.10.30, 7304.29.10.40, 7304.29.10.50, 7304.29.10.60, 7304.29.10.80, 7304.29.20.10, 7304.29.20.20, 7304.29.20.30, 7304.29.20.40, 7304.29.20.50, 7304.29.20.60, 7304.29.20.80, 7304.29.31.10, 7304.29.31.20, 7304.29.31.30, 7304.29.31.40, 7304.29.31.50, 7304.29.31.60, 7304.29.31.80, 7304.29.41.10, 7304.29.41.20, 7304.29.41.30, 7304.29.41.40, 7304.29.41.50, 7304.29.41.60, 7304.29.41.80, 7304.29.50.15, 7304.29.50.30, 7304.29.50.45, 7304.29.50.60, 7304.29.50.75, 7304.29.61.15, 7304.29.61.30, 7304.29.61.45, 7304.29.61.60, 7304.29.61.75, 7305.20.20.00, 7305.20.40.00, 7305.20.60.00, 7305.20.80.00, 7306.29.10.30, 7306.29.10.90, 7306.29.20.00, 7306.29.31.00, 7306.29.41.00, 7306.29.60.10, 7306.29.60.50, 7306.29.81.10, and 7306.29.81.50.

The OCTG coupling stock covered by the *Orders* may also enter under the following HTSUS item numbers:  7304.39.00.24, 7304.39.00.28, 7304.39.00.32, 7304.39.00.36, 7304.39.00.40, 7304.39.00.44, 7304.39.00.48, 7304.39.00.52, 7304.39.00.56, 7304.39.00.62, 7304.39.00.68, 7304.39.00.72, 7304.39.00.76, 7304.39.00.80, 7304.59.60.00, 7304.59.80.15, 7304.59.80.20, 7304.59.80.25, 7304.59.80.30, 7304.59.80.35, 7304.59.80.40, 7304.59.80.45, 7304.59.80.50, 7304.59.80.55, 7304.59.80.60, 7304.59.80.65, 7304.59.80.70, and 7304.59.80.80.

The HTSUS subheadings are provided for convenience and customs purposes only, the written description of the scope of the *Orders* is dispositive.

## IV.    DESCRIPTION OF MERCHANDISE SUBJECT TO THIS INQUIRY

This CMI addresses whether the scope of the *Orders* covers the seamless OCTG produced by Boly Pipe in Thailand using steel billets[9] from China.

## V.    LEGAL FRAMEWORK

### A.  Covered Merchandise Referrals

The Trade Facilitation and Trade Enforcement Act of 2015 authorized the EAPA program by adding section 517 to the Tariff Act of 1930, as amended (the Act).[10]  EAPA establishes a formal process for CBP to conduct civil administrative investigations of potential evasion of AD and/or

---

[9] *See* Covered Merchandise Referral Letter at 2.  "A steel billet is a cylindrical steel bar that does not have a hole in it."
[10] *See* section 421 of the Trade Facilitation and Trade Enforcement Act of 2015.

3

CVD orders.[11]  Section 517(b)(4)(A) of the Act provides that if, during the course of an EAPA investigation, CBP is unable to determine whether the merchandise at issue is covered merchandise within the meaning of section 517(a)(3) of the Act, it shall refer the matter to Commerce to make such a determination.  Section 517(b)(4)(B) of the Act states that Commerce, after receiving a covered merchandise referral from CBP, shall determine whether the merchandise is covered merchandise and promptly transmit its determination to CBP.

Commerce promulgated regulations with respect to section 517 of the Act to address procedures and standards specific to Commerce's consideration of covered merchandise referrals.[12]  Specifically, 19 CFR 351.227 governs Commerce's receipt of a covered merchandise referral, Commerce's initiation and conduct of a CMI, and Commerce's ultimate covered merchandise determination, pursuant to section 517(b)(4) of the Act.

## VI.    ANALYSIS OF COVERED MERCHANDISE INQUIRY

For purposes of this CMI, to determine whether the merchandise is covered merchandise, we considered information and analysis in Commerce's *Final Circumvention Determination*, which addressed the same scenario as presented in this CMI.

In making its affirmative determination of circumvention, Commerce considered the elements under section 781(b)(1) of the Act, taking into account the minor or insignificant criteria listed in section 781(b)(2) of the Act.[13]  In addition, pursuant to section 781(b)(3) of the Act, Commerce considered, in determining whether to include merchandise assembled or completed in a foreign country within the scope of an order, factors such as the pattern of trade, affiliation, and whether imports into the foreign country of the merchandise described in section 781(b)(1)(B) of the Act have increased after the initiation of the investigation.[14]

In reaching our *Final Circumvention Determination*, Commerce took into consideration the factors under sections 781(b) of the Act and determined that the totality of factors in this inquiry warranted an affirmative finding of circumvention of the *Orders*.[15]  Upon taking into consideration section 781(b)(3) of the Act, we determined that action is appropriate to prevent evasion of the *Orders*, pursuant to section 781(b)(1)(E) of the Act.  Consequently, our analysis led us to find that, in accordance with sections 781(b)(1)-(3) of the Act, seamless OCTG completed in Thailand from Chinese-origin steel billets was circumventing the *Orders* and, consequently, should be included within the scope of the *Orders*.

As a result, based on the analysis in the *Final Circumvention Determination*, Commerce is able to respond to CBP's covered merchandise referral and inform CBP that the merchandise subject to this inquiry is within the scope of the *Orders*.

---

[11] *Id*.; *see also* section 517 of the Act
[12] *See Regulations To Improve Administration and Enforcement of Antidumping and Countervailing Duty Laws*, 86 FR 52300, 52354 (September 20, 2021) (Revised 2021 AD/CVD Regulations).
[13] *See Oil Country Tubular Goods from the People's Republic of China:  Preliminary Affirmative Determination of Circumvention of the Antidumping Duty and Countervailing Duty Orders*, 90 FR 40336 (August 19, 2025), and accompanying Preliminary Decision Memorandum, unchanged in *Final Circumvention Determination*.
[14] *Id.*
[15] *Id.*

4

## VII.    DISCUSSION OF THE ISSUES

As described in the "Background" section above, pursuant to 19 CFR 351.227(d)(1), the Boly Pipe Group and CSP timely submitted comments and factual information addressing the initiation of this CMI.[16]  Here, we address the issues raised in those comments.

**Comment 1:  Effective Date of Application of Duties**

*Boly Pipe Group's Comments:*

The Boly Pipe Group did not provide an executive summary regarding this argument.  The Boly Pipe Group's arguments may be found at pages 11-13 of Boly Pipe Group's Initiation Comments.

*CSP's Comments:*

The following is a summary of arguments submitted by CSP (footnotes omitted).  For further details, *see* CSP's Initiation Comments at 10-19.

> Notwithstanding the Department's determination in the circumvention proceeding, CSP's entries pre-date the initiation date of the Department's circumvention inquiry and the retroactive application of AD/CVD is not warranted by the facts of this case.  Furthermore, as an established U.S. company with extensive diligence programs and validation processes in place for manufacturers and suppliers, CSP believes it is patently unfair and legally improper to impose AD/CVD on entries made before it had any "fair warning" of potential AD/CVD liability.

**Commerce's Position:**  The Boly Pipe Group and CSP argue that applying AD/CVD duties to entries prior to the initiation of the circumvention inquiry is impermissible and would deprive interested parties of notice.  We disagree.  To the extent the Boly Pipe Group and CSP contend that Commerce lacks the authority to apply its determination to entries prior to the initiation of the circumvention inquiry, 19 CFR 351.227(l)(3)(iii) provides Commerce with the authority to apply suspension of liquidation to certain entries entered prior to initiation of a CMI, without reference to another segment of the proceeding, such as a circumvention inquiry.  However, we agree that, in this instance, it is appropriate to anchor the application of Commerce's determination to the initiation of the circumvention inquiry, for the reasons discussed below.

This proceeding is a CMI and, as a result, timing for suspension of liquidation is governed by 19 CFR 351.227(l)(3).  According to 19 CFR 351.227(l)(3)(iii), Commerce will "normally" apply suspension of liquidation to unliquidated entries that were entered, or withdrawn from

---

[16] *See* Boly Pipe Group's Letter, "Comments on CBP Covered Merchandise Referral and Commerce's Initiation of Covered Merchandise Inquiry," dated January 30, 2026 (Boly Pipe Group's Initiation Comments); *see also* CSP's Letters, "Notice of Covered Merchandise Referral and Initiation of Covered Merchandise Inquiry – Factual Information," dated January 30, 2026; and "Notice of Covered Merchandise Referral and Initiation of Covered Merchandise Inquiry – Comments and Factual Information," dated January 30, 2026 (CSP's Initiation Comments).

Filed By: Brian Davis, Filed Date: 4/22/26 12:18 PM, Submission Status: Approved

warehouse, prior to the date of publication of the initiation of the CMI.[17]  Therefore, we look for a date prior to initiation of this CMI (*i.e.*, prior to December 31, 2025) to begin suspension of liquidation.

The production scenarios at issue in this CMI are derived from Commerce's *Final Circumvention Determination* which determined that imports of seamless OCTG completed in Thailand using steel billets produced in China were circumventing the *Orders*.  In this CMI, Commerce relies on that determination in concluding the same production configuration is covered by the *Orders*.

In these circumstances, Commerce finds it appropriate to anchor the application of its determination to the publication of the initiation of the circumvention inquiry, which reflects the point at which Commerce first examined whether the production configuration at issue was circumventing the *Orders*, rather than applying a broader retroactive approach to entries predating that analysis.  Accordingly, Commerce applies the circumvention finding in the CMI to the unliquidated entries at issue entered on or after December 18, 2024, the initiation date of the circumvention inquiry.

**Comment 2:  Whether Steel Billets are Subject Merchandise**

*Boly Pipe Group's Comments:*

The Boly Pipe Group did not provide an executive summary regarding this argument.  The Boly Pipe Group's arguments may be found at pages 5-11 of Boly Pipe Group's Initiation Comments.

No other interested party commented on this issue.

**Commerce's Position:**  The Boly Pipe Group argues that this CMI pertains to whether Chinese steel billets are subject merchandise.  We disagree.  Rather, as stated in the *Initiation Notice*, this CMI was initiated to determine "whether the OCTG produced by Boly Pipe Co., Ltd. (Boly Pipe) in Thailand out of steel billets from China is subject to the *Orders* on OCTG from China."[18]

**VIII.  NOTIFICATION TO CBP**

In its covered merchandise referral, CBP requested that Commerce determine whether seamless OCTG produced in Thailand by Boly Pipe using Chinese-origin steel billets, and exported from Thailand to the United States to CSP or JOL Tubular, is within the scope of the *Orders*.  Based on the analysis described above, Commerce is able to respond to CBP's covered merchandise referral and inform CBP that the merchandise subject to this CMI is within the scope of the *Orders*.

---

[17] *See* Revised 2021 AD/CVD Regulations, 86 FR 52300, 52383; *see also* 19 CFR 351.227(l).
[18] *See Initiation Notice*, 90 FR 61376.

6

## IX.    RECOMMENDATION

We recommend finding that the merchandise subject to this CMI is subject to the *Orders*. If the recommendation in this memorandum is accepted, we will publish the final determination of this CMI in the *Federal Register* and, in accordance with section 517(b)(4)(B) of the Act and 19 CFR 351.227(e)(2), we will notify CBP of our determination.

☒                                    ☐

_____            _____
Agree                              Disagree

X _____

Signed by: CHRISTOPHER ABBOTT

Christopher Abbott
Deputy Assistant Secretary
  for Policy and Negotiations,
  performing the non-exclusive functions and duties
  of the Assistant Secretary for Enforcement and Compliance

7